### ANDERSON *v.* McALEENAN.

*(Common Pleas of New York City and County, General Term.* February 3, 1890.)

1. BAILMENT—POWER OF BAILEE—PLEDGE.
   Delivery of a chattel to a person with authority to sell it to one A., but without a general power of sale, does not confer authority to pledge the chattel.
2. SAME—EVIDENCE—CONVERSATIONS.
   The conversations between the owner and the person to whom he delivered the chattel, at the time of the delivery, there being no writing between them, are com petent evidence against the pledgee or his assignee.
3. EVIDENCE—ADMISSIONS—STATEMENTS OF COUNSEL.
   Statements of counsel made while acting in a professional capacity cannot be considered as admissions of fact by an agent to bind his client.
4. TRIAL—INSTRUCTIONS—COMMENTS ON EVIDENCE.
   It is within the province of a trial judge to tell the jury that a certain case, in its facts, is very like the case at bar, and the fact that he incidentally divulges the circumstance that in that case the jury found for plaintiff is immaterial, where the jury are instructed that they are to find a verdict on the evidence before them.

Appeal from trial term.

An action by Otis Anderson against Henry McAleenan for the conversion of a diamond ring. Plaintiff delivered the ring to one Katen. The purpose of the delivery is disputed, plaintiff asserting that he let Katen take it to show to a couple of ladies, on his express promise to return it the next day. Katen pawned the ring, and the pawnbroker transferred the pledge to defendant, also a pawnbroker. It was not disputed the advances were made in good faith and never returned. The jury returned a verdict for plaintiff. From the judgment entered thereon defendant appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER and BISCHOFF, JJ.

*Thomas McAdam* and *David Leventritt,* for appellant. *James Flynn,* for respondent.

LARREMORE, C. J. The jury were correctly charged that if plaintiff delivered the diamond ring referred to in the complaint to Alexander Katen, with authority to exhibit it to a particular person, and to sell it to such person if the latter wished it, said Katen was not thereby given a power of disposition sufficiently broad to enable him to pledge said ring. The jury were further instructed that if Katen was given general power of sale and disposition of the ring, his pledging of it was within the scope of his legal authority, and that defendant would be entitled to hold the property as security for the sum actually advanced. The learned judge in his charge, followed the case of *Heilbronn* v. *McAleenan*, 1 N. Y. Supp. 875, (in the general term of the supreme court of this department,) and we concur in the exposition of the law therein given by Presiding Justice VAN BRUNT.

Nor did the trial judge err in instructing the jury to disregard the statements made by Mr. Lynn upon the hearing before the mayor, in the proceeding against defendant for alleged violation of his pawnbroker's license. Such statements, as the trial judge intimated, might with propriety have been excluded when offered in evidence. Mr. Lynn is a member of the bar, and appeared upon the hearing before Mayor Hewitt as counsel. He was retained by Mr. Herbert, and not by plaintiff, although plaintiff admits that he "supposed" Lynn represented him (plaintiff) as well as Herbert. Plaintiff further avers that he did not authorize Mr. Lynn to make the statements upon which defendant relies, and that he did not hear Mr. Lynn make them. This testimony would tend to negative any express authority on the part of Mr. Lynn

to make declarations binding upon plaintiff. But, outside of this considera-tion, the judge's ruling was correct on the broad ground that Mr. Lynn was acting as counsel at the time when he made the statements, and that declara-tions made in such capacity cannot be brought forward as admissions of fact to bind his client. The rule that declarations of an agent, made within the scope of his authority, will bind the principal, has no application here. A man's counsel is in one sense his agent, but the special work which the coun-sel has to perform is to make the most favorable showing possible upon facts as well as law. He is an advocate with unlimited powers of discretion. He is not like an ordinary agent, whose express duties and methods of procedure are laid out beforehand, so that the principal may justly be held liable for what he originates, though its execution be intrusted to another. And advo-cate's statements are always supposed to be adapted to the exigencies of the case on trial, and colored by what he conceives his client's best interest de-mands at that particular time, and under those peculiar circumstances. Acts and statements that would seem disingenuous, or even culpably misleading, in other relations of life are pardoned in a professional advocate because of his necessary attitude towards his client and towards the enemy. There is every reason, therefore, why the oral statements of counsel upon a judicial inquiry of any sort, no matter what their purport may be, should not be taken as solemn admissions of fact which the client may not afterwards gainsay. It has been held that an admission in a pleading is competent evidence against the party in whose behalf it is interposed in an action. But that is the case of a formal written instrument; and, moreover, it must be shown, "by the signature of a party, or otherwise, that the facts were inserted with his knowl-edge, or under his direction, and with his sanction." *Cook* v. *Barr*, 44 N. Y. 156.

The learned judge did not err in admitting the conversations between plaintiff and Katen at the time of the delivery, and as to the return of the ring. The very point to be proved was the extent and nature of Katen's power of disposal of the ring. This necessarily proceeded from some com-munication from plaintiff to Katen, and, as there was nothing in writing be-tween them, the best evidence was a *verbatim* account of the conversations that they had.

Another point has been urged by appellant, which I feel called upon to notice, because it seems to involve a misconception of a previous decision of this court. The trial judge, in his charge, read to the jury a portion of the opinion of Judge VAN BRUNT in the case of *Heilbronn* v. *McAleenan*, above re-ferred to, telling them that the law governing the case at bar was therein laid down. Said opinion contained a statement of facts, and an application of legal principles to them, but also divulged the circumstance, incidentally and as part of the argument, that in that case the jury had found for plaintiff. Under the decision in *Reich* v. *Mayor*, 12 Daly, 75, appellant claims that erro was committed necessitating a reversal. The *Reich Case* was simply an ex-tension of the doctrine that the jury must receive instructions on the law from the court, and not from counsel. Many cases will be found in the books holding that counsel may not, in summing up, read law-books to the jury. *Reich* v. *Mayor* merely decided that if a counsel, after being directed to close a book from which he was reading, goes on and states from memory the sub-stance of what the book contains, and informs the jury of the decision in the reported case, he will have broken the rule just as effectually as if he had read from the printed book. This is the scope of that decision, as I under-stand it, and in my opinion it has no application to the case at bar. It is the duty of the judge to guide the jury, and whether he states the law from his own knowledge and memory, or reads it from decisions, treatises, or his own manuscript, is immaterial. It is within the province of the court to say that a certain case is in its facts very like the case at bar, provided, of course, that

it be left to the jury to press upon the facts.    Whether a decision is an author-
ity for a case on trial or not depends on its facts, and the court, before it holds
the case to be an authority, must consequently always decide that the facts
of the two cases are substantially analogous.    His belief that the two cases re-
semble one another on the facts is therefore necessarily implied. every time a
judge used a decision as a precedent in charging a jury, and I can see no pos-
sible objection to express such belief in so many words.    Nor do I think the
mere fact that a judicial opinion, in the course of its reasoning to show that
the verdict appealed from should be sustained, happens to disclose what such
verdict was, precludes the reading of such opinion to a jury in another case,
as part of the judge's charge.    The jury must, of course, always be given to
understand, as they were in the case at bar, that they are to find an independ-
ent verdict on the evidence before them, deducing from the opinion read mere-
ly the legal principles which are to govern.    The judgment and order appealed
from should be affirmed, with costs.    All concur.